# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEFAN INGRAM, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 18-3776 |
| EXPERIAN INFORMATION SOLUTIONS, INC., *et al.*, | : | |
| Defendants. | : | |

Goldberg, J.                                                                                                         June 30, 2021

## MEMORANDUM OPINION

Plaintiff Stefan Ingram originally brought suit against Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Waypoint Resource Group, LLC ("Waypoint"), and Comcast Cable Communications, LLC ("Comcast") in connection with a Comcast account allegedly opened using Plaintiff's name and for which Waypoint acted as a debt collector. Plaintiff sets forth claims under the Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA").

Following various settlements, Waypoint is the sole remaining defendant. Waypoint moves for summary judgment on all claims against it. For the following reasons, I will grant the Motion in its entirety.

## I. STATEMENT OF UNDISPUTED FACTS

### A. The Comcast Account

Unless so indicated, the following facts are uncontested.[1]

---

[1] References to the parties' submissions will be made as follows: Defendants' Statement of Undisputed Facts ("DSUF"), Plaintiff's Response ("PR"), Plaintiff's Counter-Statement of Undisputed Facts ("PCSUF"), and Defendant's Response ("DR"). To the extent a statement is undisputed by the parties, I will cite only to the parties' submissions. If a statement is disputed and can be resolved by

According to Plaintiff, a Comcast account was fraudulently opened in his name for service at 1330 N 53rd Street, Philadelphia, Pennsylvania 19131. (DSUF ¶¶ 2–3; PR ¶¶ 2–3.) Plaintiff is not aware of anyone that has resided at that address, and according to his tax returns from 2016–2018, his credit reports from October and December 2019, and his current driver's license, he never lived at that address. (DSUF ¶¶ 4–6; PR ¶¶ 4–6.) Plaintiff claims that he did not authorize anyone to open the Comcast account in his name. (Def.'s Mot. Summ. J., Ex. A, Dep. of Stefan Ingram ("Ingram Dep."), 29:12–22, 70:21–71:18.)

When the account became delinquent, Comcast placed it with Stellar Recovery, Inc. for collection. (DSUF ¶ 12; PR ¶ 12.) Sometime thereafter, Plaintiff checked his credit report and learned of the account's existence. (DSUF ¶ 13; PR ¶ 13.) On October 19, 2017, Plaintiff's attorney sent a letter to Comcast advising that the debt was inaccurate, requesting that Comcast perform a reasonable investigation of the debt, and demanding that Comcast report to the credit reporting agencies that the account is disputed. (DSUF ¶ 15; PR ¶ 15.) Specifically, the letter stated, in pertinent part:

> Mr. Ingram does not believe the above-referenced alleged debt to be accurate and therefore disputes it. In accordance with the Fair Debt Collection Practices Act codified under 15 U.S.C. § 1692(a–p), we are asking for, and you are required to provide validation of this alleged debt. In accordance with the Fair Credit Reporting Act codified under Title 15 United States Code Section 1681, we are asking for (1) a reasonable investigation; (2) that you report the results of this reasonable investigation to my office; and (3) that you notify each credit bureau to mark this account "disputed." Additionally, and if applicable, please provide this letter to the company for whom you are collecting so that they have notice of my dispute. Please also provide the amount it is alleged Mr. Ingram owes on this debt. If this alleged account has been transferred to or from another agency, please provide that agency's name and address.
>
> It is Mr. Ingram's position that this is not his account. Please investigate and validate the credit information your agent, Stellar Recovery Inc., has furnished in Mr. Ingram's credit reports, or instruct Stellar Recovery Inc.

---

reference to the exhibits, I will cite the supporting exhibits. I will not rely on any statement of fact that is unsupported by reference to a specific exhibit.

> to delete the tradelines. If you claim that late payments are verified, we hereby demand strict proof of every alleged late payment.

(Def.'s Mot. Summ. J., Ex. C.)

In a November 6, 2017 letter, Comcast responded to Plaintiff's letter and requested various pieces of information:

> We are sending this letter in response to your letter dated October 19, 2017 regarding your client Stefan Ingram.
>
> If you believe Mr. Ingram has been a victim of fraud or identi[t]y theft he will need to submit a claim to Comcast. Please advise your client to obtain the fraud and identi[t]y theft affidavit available from the Federal Trade Commission (FTC) website at www.consumer.gov/idtheft. The completed affidavit must be notarized and submitted to Comcast, not the FTC, along with proof of residence during the time being disputed, in this case proof of residence from July 15, 2016 through November 18, 2016 is required. A police report or incident report is required along with a valid government-issued photo identification card such as a driver's license, state-issued ID card or passport. Please return all paperwork to Comcast Customer Security Assurance, Attention: Fraud Department, 101 Woodcrest Road, Suite 141, Cherry Hill, New Jersey 08003. Mr. Ingram may also return the paperwork via facsimile at (844) 335-8719. Please be advised that the entire process, start to finish, may take up to 30 days. During the investigation Comcast will suspend collection activity and request that all credit bureaus are notified that this account is under investigation for identity theft. If Comcast concludes the suspect account was the result of identi[t]y theft, Comcast will request the removal of this information from Mr. Ingram's credit report.

(Def.'s Mot. Summ. J., Ex. C-1.) Plaintiff did not submit a police report at or near that time and never provided the required affidavit to Comcast. (DSUF ¶¶ 20–21; PR ¶¶ 20-21; Ingram Dep. 54:2–56:9.)

Comcast never made any determination that the Comcast account dispute was opened as a result of fraud or that Plaintiff was not responsible for the account. (Ingram Dep. 57:8–17.) As such, Comcast continued to attempt to collect the alleged debt for this account. (Id. at 57:18–22.) Although the account was removed from his trade line with Stellar Recovery Group, it has continued to be listed on his credit report. (Id. at 57:23–8:20.)

**B.      The Waypoint Trade Line**

On November 27, 2017, Comcast referred the account to Waypoint for collection. (Def.'s Mot. Summ. J., Ex. F, Dep. of Virginia Lozano ("Lozano Dep.") 50:6–12.) Virginia Lozano, who originally handled this account on behalf of Waypoint, testified that Waypoint was not informed of Comcast's prior collection efforts or the correspondence from Plaintiff's counsel. (Id. at 101:10–25; Def.'s Mot. Summ. J., Ex. G.) According to Waypoint's account notes, on November 30, 2017, Comcast requested that the account be placed on hold as "under investigation" and with the legal team. (Def.'s Mot. Summ. J., Ex. G.) Later that same day, however, Comcast informed Waypoint that Plaintiff had not submitted the requested "fraud packet" and that collections could resume until that "fraud packet" was received. (Id.) Ms. Lozano, who had made the November 30, 2017 entry, could not recall any other circumstances related to that notation. (Lozano Dep. 57:8–24, 101:10–102:5.)

In the meantime, Plaintiff checked and confirmed that his date of birth and social security number, provided by Comcast to Waypoint, matched his identifying information. (DSUF ¶ 37; PR ¶ 37.) Although Waypoint's records and account notes indicated that it made attempts to contact Plaintiff, Plaintiff testified that (a) he never actually talked to anyone at Waypoint and (b) he last used the phone number listed on Waypoint's records over ten years ago. (Ingram Dep. 87:1–24; DSUF ¶ 39; PR ¶ 39.) Plaintiff also received no letters from Waypoint. (DSUF ¶ 40; PR ¶ 40.)

On June 29, 2018, Plaintiff, through counsel, disputed Waypoint's trade line[2] on Experian's website. (DSUF ¶ 41; PR ¶ 41.) The report generated by Experian described Plaintiff's dispute as stating, "THIS IS NOT MY ACCOUNT. PLEASE REMOVE THIS FROM MY CREDIT." (Def.'s Mot. Summ. J., Ex. J.) Aside from this report, Plaintiff did not otherwise have any communication with Waypoint prior to suit being filed. (Lozano Dep. 102:1–5.)

---

[2] "A tradeline is information about a consumer account that is sent, generally on a regular basis, to a consumer reporting agency. Tradelines contain data such as account balance, payment history, and status of the account." https://www.consumerfinance.gov/data-research/research-reports/market-snapshot-third-party-debt-collections-tradeline-reporting.

On July 16, 2018 Waypoint received the dispute—known as an "Automated Credit Dispute Verification" or "ACDV"—from Experian through the e-OSCAR platform, which is an electronic system for handling disputes made to credit reporting agencies regarding collection accounts. (DSUF ¶ 64; Lozano Dep. 31:17–33:11.) The dispute was assigned to Waypoint's employee, Samantha Pelfrey, an "Administrative Wage Garnishment Analyst." (PCSUF ¶ 18; DR ¶ 18; Def.'s Mot. Summ. J., Ex. K, Dep. of Samantha Pelfrey ("Pelfrey Dep.") 14:1–16:9.) Ms. Pelfrey understood that, based on the dispute code, Plaintiff's account was simply "asking for the account information and the balance." (Pelfrey Dep. 24:14–25:7.) Ms. Pelfrey observed that the listed dispute code was "112: consumer states inaccurate information. Provide or confirm complete ID and verify all Account Information." The ACDV did not have the consumer dispute code 103, which is associated with a fraud claim. (Def.'s Mot. Summ. J., Ex. J.; Pelfrey Dep. 38:2–17.) Ms. Pelfrey noted that, as part of the investigation for dispute code 112, "[t]he information would just be verified through the Artvita system," which is a Waypoint internal database containing information about Waypoint's accounts. (Pelfrey Dep. 24:8–12; Lozano Dep. 26:8–25.) Ms. Pelfrey updated Plaintiff's address in the system and confirmed the account name and social security number. (Pelfrey Dep. 37:1–14.) Ms. Pelfrey testified that had there been a dispute code 103, indicating fraud, she would have taken different steps when reviewing Plaintiff's account. (Id. at 38:2–17.)

When responding to the ACDV, Waypoint's system automatically marked Plaintiff's account with compliance code "XB," indicating that "Account information disputed by consumer under the Fair Credit Reporting Act Definition." (DSUF ¶¶ 76–77; PR ¶¶ 76–77.) Waypoint's trade line was then marked as disputed. (DSUF ¶ 78; PR ¶ 78.)

Plaintiff eventually obtained a police report from the Philadelphia Police Department on July 18, 2018. (Def.'s Mot. Summ. J., Ex. E.) The report indicated that the date of the incident was September 1, 2017. (DSUF ¶ 25; PR ¶ 25; Def.'s Mot. Summ. J., Ex. E.) The police told Plaintiff that because the

account was not big, he should just handle the matter with his lawyer. (Ingram Dep. 73:23–74:6.) Notably, however, the police report was not provided to Comcast until after suit was filed in September 2018. (DSUF ¶ 27; PR ¶ 27.)

On July 23, 2018, Comcast informed Waypoint that the dispute was "invalid" and that the responsible party was "Stefan Ingram." (Def.'s Mot. Summ. J., Ex. G at p. 5.) On November 21, 2019, Plaintiff received a further report from Comcast indicating that it had researched the account, determined the debt valid, and deemed the dispute invalid. (Id. at p. 6.) Waypoint also noted Comcast's direction that "[i]f customer states account is fraud, please advise customer to proceed with fraud claim process and SPA team. Please resubmit dispute if additional information submitted by consumer." (Id.)

### C. Experian's November ACDV and Trade Line Removal

On November 15, 2018, Waypoint received a second ACDV from Experian. (Lozano Dep. 63:12-24.) Waypoint's notes indicated "CBR dispute, EXP 1-3; involved in litigation. Consumer states the Com[c]ast account was the result of ID theft and he has a police report." (Id. at 63:22–24; Def.'s Mot. Summ. J., Ex. G.) On November 16, 2018, Waypoint received a separate ACDV from Equifax. (Def.'s Mot. Summ. J., Ex. G.) Upon notification of the dispute based on fraud, Waypoint deleted the disputed trade line and ceased collections activity on the account. (Lozano Dep. 105:1–24.)

Subsequently, Comcast informed Waypoint that the dispute was "invalid." Specifically, Waypoint's notation stated, "Researched account, debt valid, If customer states account is fraud, please advise customer to proceed with fraud claim process and SPA team. Please resubmit dispute if additional information submitted by consumer." (Def.'s Mot. Summ. J., Ex. G p. 6.)

On November 29, 2018, following Plaintiff's dispute, Waypoint closed Plaintiff's account. (Def.'s Mot. Summ. J., Ex. G.) As such, Comcast assigned Plaintiff's account to another collection agency in December 2018. (DSUF ¶ 90; PR ¶ 90.)

### D. Procedural History

On September 5, 2018, Plaintiff filed suit against Defendant Waypoint, as well as Defendants Experian, Equifax, and Comcast, setting forth claims under the FCRA and the FDCPA against all Defendants. Plaintiff also brought a claim of defamation against Experian and Equifax, and a claim under the Pennsylvania Consumer Protection Law against Comcast. Following various settlements, the sole remaining Defendant is Waypoint.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue in rebuttal. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. Kmart

7

Corp, 260 F.3d 228, 232 (3d Cir. 2001). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

## III. DISCUSSION

### A. Fair Credit Reporting Act Claims

Plaintiff's claim against Waypoint is premised on 15 U.S.C. § 1681s–2(b), a provision of the FCRA that regulates how the furnishers of credit information must respond when they are given notice of a dispute over consumer credit records. Section 1681s–2(b) provides, in relevant part:

> (1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and then compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s–2(b).

If a furnisher fails to comply with these requirements, then § 1681n and § 1681o "authorize[] consumers to bring suit for damages caused by a furnisher's . . . breach" when that breach is willful or negligent. Seamans v. Temple Univ., 744 F.3d 853, 864 (3d Cir. 2014). Ultimately, to state a claim in a suit arising under § 1681s–2(b), "a plaintiff must allege (1) that he notified a credit reporting agency ("CRA") of the dispute under § 1681i, (2) that the CRA notified the party who furnished the information;

and (3) that the party who furnished the information failed to investigate or rectify the disputed charge." Horsch v. Wells Fargo Home Mortg., 94 F. Supp. 3d 665, 672 (E.D. Pa. 2015) (citing Taggart v. Norwest Mortg., Inc., No. 09–1281, 2010 WL 114946, at *9 (E.D. Pa. Jan. 11, 2010), aff'd, 539 F. Appx. 42 (3d Cir. 2013)).

Waypoint—as the agent of Comcast, who furnished the disputed information—alleges that Plaintiff's FCRA claim fails as a matter of law. Specifically, Waypoint contends that Plaintiff is unable to establish that he raised a "bona fide dispute" as necessary to trigger any duty under the FCRA, 15 U.S.C. § 1681s-2(b).

The bona fide dispute requirement is inherent in the first element of an FCRA claim, which requires that a consumer give notification of a dispute. See Shap v. Capital One Fin. Corp., No. 11-cv-4461, 2012 WL 1080127, at *4 (E.D. Pa. Mar. 30, 2012). The FCRA itself provides some guidance in determining whether a dispute is bona fide:

> A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that—(i) identifies the specific information that is being disputed; (ii) explains the basis for the dispute; ***and (iii) includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.***

15 U.S.C. § 1681s-2(a)(8)(D) (emphasis added). This provision goes on to state that the duty to investigate and report disputes "shall not apply if the person receiving a notice of a dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant, including—(i) by reason of the failure of a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681s-2(a)(8)(F)(i).

Interpreting these provisions, courts in the Third Circuit have held that a dispute is frivolous, and thus not bona fide, "if a consumer has failed to provide sufficient information to the furnisher to aid in the furnisher's investigation of the dispute." Palouian v. FIA Card Servs., No. 13-cv-293, 2013 WL

1827615, at *3 (E.D. Pa. May 1, 2013); see also Noel v. First Premier Bank, No. 12-cv-50, 2012 WL 832992, at *9 (M.D. Pa. March 12, 2012). "If the dispute is frivolous, the furnisher cannot be liable to the consumer for the failure to investigate the completeness or accuracy of information under § 1681s-2(b)." Palouian, 2013 WL 1827615, at *3.

In Noel v. First Premier Bank, the district court addressed—in the context of a motion to dismiss—the bona fide dispute requirement. The plaintiff alleged that the defendant bank placed information on his credit report containing incorrect amounts of balance, interest, and finance charges. 2012 WL 832992, at *1. The plaintiff further averred that he raised the disputed matters in writing with the bank, but the bank had failed to respond or take action. Attached to the plaintiff's complaint was bank correspondence responding to his dispute and directing that plaintiff needed to provide certain information to allow an investigation. Id. at *2. Plaintiff never provided that information, but rather sent a second letter substantively identical to his initial letter. Id. The plaintiff filed suit under the FCRA, and the defendant bank moved to dismiss.

The court dismissed the plaintiff's claim, noting that a failure to report a meritless dispute does not give rise to a violation of § 1681s-2(b). Id. at *8. It also concluded that "if a consumer does not comply with the submission requirements of § 1681s-2(a)(8)(D) or if a dispute is determined to be frivolous or irrelevant under § 1681s-2(a)(8)(F), the furnisher has no duty to report the debt as disputed under § 1691s-2(a)(3) and is not subject to liability under § 1681s-(2)(b). Id. at *9. The court observed that the plaintiff in that case had not provided the defendant with any additional information:

> Because Plaintiff provided such scant information to Defendant in his initial correspondence and, following receipt of Defendant's correspondence, did not provide any additional information, we conclude Plaintiff has not satisfied the requirements of § 1681s2(a)(8)(D)(iii) because Plaintiff did not submit, as requested by Defendant, "all supporting documentation or other information reasonably required to substantiate the basis of the dispute." . . . Similarly, Plaintiff's request may be deemed frivolous or irrelevant pursuant to § 1681s–2

(a)(8)(F)(i)(I) because Plaintiff failed to provide sufficient information to investigate.

Id. at *10 (internal citations omitted). The court granted the motion to dismiss, noting that its decision was "based upon the information provided by Plaintiff to Defendant" and that "Plaintiff's after-the-fact elaboration on the information contained in the correspondence and argument based on what he *intended* to request/assert regarding the basis for his dispute are not germane to our decision." Id.

Similarly, in Palouian v. FIA Card Services, the plaintiff alleged that the defendant furnished derogatory information about the plaintiff's account to credit reporting agencies. 2013 WL 1827615, at *1. The plaintiff disputed the accounts in writing with the relevant credit bureaus, but the defendant claimed to have verified the accounts with the agencies. Id. Attached to the plaintiff's complaint were letters and documentation reflecting that the defendant attempted to get in touch with plaintiff and indicating that if it did not hear from the plaintiff within fourteen days, it would deem the matter resolved. Id. The district court dismissed the claim, holding that the plaintiff had not shown that he provided sufficient information to the defendant to enable the defendant to investigate his dispute. Id. at *4. Accordingly, it found that the plaintiff had failed to demonstrate that his dispute was bona fide. Id.

This case presents similar situations to the Noel and Palouian cases, albeit in the context of a motion for summary judgment, thus imposing an evidentiary burden on Plaintiff. The evidence is undisputed that Plaintiff, through his attorney, sent a letter to Comcast stating that he did not believe the account at issue was his. Thereafter, Comcast indicated that it would mark the account as under investigation but stated that Plaintiff needed to send a completed FTC affidavit, proof of residence, a police report or incident report, and a valid government-issued photo identification card. Three weeks after Comcast sent its letter to Plaintiff, Comcast placed the account with Waypoint for collection. Although Comcast originally requested that the account be placed on hold as "under investigation" and

with the legal team, shortly thereafter, it informed Waypoint that Plaintiff had not submitted the requested "fraud packet" and that collections could resume until that fraud packet was received.

Importantly, Plaintiff has admitted that he never submitted the FTC affidavit. Although Plaintiff eventually produced a police report, his driver's license, and address history during discovery in this case, Plaintiff has produced no evidence that he ever gave these items to Comcast or Waypoint at any time prior to suit or during the relevant events in question. While Plaintiff twice disputed Waypoint's trade line through the consumer reporting agencies—once on July 6, 2018 and once on November 15, 2018—Plaintiff admitted to making no other effort to contact Waypoint prior to suit being filed. Comcast specifically informed Waypoint that both of these disputes were "invalid" and that if Plaintiff believed the account was fraud, he was required to submit the additional information requested. On November 29, 2018, Waypoint closed Plaintiff's account when Comcast assigned it to another agency.

In order to deflect summary judgment, Plaintiff has the burden of coming forward with evidence showing that he submitted a bona fide dispute. Because Plaintiff provided such scant information in his initial correspondence and failed to provide any additional information following receipt of Comcast's correspondence, I conclude that Plaintiff has not satisfied the requirements of § 1681s2(a)(8)(d)(iii) because he did not submit "all supporting documentation or other information reasonably required to substantiate the basis of the dispute." Moreover, Plaintiff's request for an investigation may be deemed frivolous—as set forth in § 1681s-2(a)(8)(F)(i)(I)— because he failed to provide sufficient information upon which Waypoint could investigate. Plaintiff's post-suit efforts to substantiate his claims of fraud are irrelevant to whether he submitted a bona fide dispute. Absent such a bona fide dispute, submitted to Comcast and communicated to Waypoint as Comcast's agent, Waypoint's duty to investigate under the FCRA was not triggered.

Even viewing the undisputed facts in the light most favorable to Plaintiff, I find, as a matter of law, that Plaintiff's FCRA claim against Waypoint must fail.[3]

## B. Fair Debt Collection Practices Act Claims

Defendant Waypoint also moves for summary judgment on Plaintiff's FDCPA claim.

The FDCPA is an explicitly remedial statute, passed by Congress "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e). To prevail on an FDCPA claim, a plaintiff must establish the following: "(1) [the plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Daniels v. Solomon & Solomon P.C., 751 F. App'x 254, 256 (3d Cir. 2018) (quoting Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014)). For purposes of summary judgment, Waypoint does not contest the first three elements, but rather argues, under the fourth element, that Plaintiff has failed to produce any evidence of Waypoint's violation of any provision of the FDCPA.

The Amended Complaint contends that Waypoint allegedly violated several provisions of the FDCPA: 15 U.S.C. §§ 1692e, e(2), e(8), e(10), f, f(1).

### 1.  15 U.S.C. § 1692e(2), (8), and (10)

15 U.S.C. § 1692e provides, in pertinent part:

---

[3] Waypoint's Motion raises three additional arguments as to the FCRA claim: (1) Plaintiff has failed to establish that any information reported by Waypoint was factually "inaccurate or incomplete"; (2) Waypoint's investigation of the first ACDV received in July 17, 2018, when considered in light of the scant information provided, was reasonable; and (3) Plaintiff has produced no evidence showing that Waypoint's alleged inaccurate reporting was a substantial factor in causing him actual harm.
  Viewing the evidence in the light most favorable to Plaintiff, I find that genuine issues of material fact would likely preclude summary judgment on these arguments. Indeed, the issue of whether a furnisher's post-dispute investigation was reasonable is "normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." Seamans v. Temple Univ., 744 F.3d 853, 864–65 (3d Cir. 2014) (quotations omitted). As I have already found as a matter of law, however, that Plaintiff failed to present a bona fide dispute, I need not address this issue further.

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> **(2)** The false representation of--
> **(A)** the character, amount, or legal status of any debt; or
> **(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> **(3)** The false representation or implication that any individual is an attorney or that any communication is from an attorney.
> **(4)** The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> . . .
>
> **(8)** Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
> . . .
>
> **(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(2), (8), (10).

When analyzing the communications or representations giving rise to the FDCPA claim, courts routinely apply the "least sophisticated debtor standard." <u>Jensen v. Pressler & Pressler</u>, 791 F.3d 413, 418 (3d Cir. 2015). The United States Court of Appeals for the Third Circuit has explained that while this standard is "lower than the standard of a reasonable debtor," it is an objective test that assumes "a quotient of reasonableness and presume[es] a basic level of understanding and willingness to read with care." <u>Id.</u> "Although established to ease the lot of the naive, the standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety." <u>Campuzano-Burgos v. Midland Credit Mgmt., Inc.</u>, 550 F.3d 294, 299 (3d Cir. 2008). Whether the least sophisticated debtor would be misled by a particular

communication is a question of law. Thomas v. John A. Youderian Jr., LLC, 232 F. Supp. 3d 656, 672 (D. N.J. 2017).

Section 1692e contains an additional materiality requirement that "is simply a corollary of the well-established 'least sophisticated debtor' standard." Jensen, 791 F.3d at 418. "[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." Id. at 420. Therefore, this section "preclud[es] only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor." Id. at 422.

Here, the entirety of Plaintiff's argument regarding the basis for his FDCPA claim states:

> Waypoint violated §§ 1692e(2), e(10), f and f(1) of the FDCPA. Contrary to Waypoint's claims, Plaintiff communicated to Waypoint that Plaintiff disputed the debt. Contrary to Waypoint's claims, Plaintiff has produced ample evidence that Waypoint engaged in "false, deceptive, or misleading representations or means" in attempting to collect the alleged debt related to the Comcast account. Contrary to Waypoint's claims, Waypoint had knowledge of Plaintiff's dispute that the Comcast account was not authorized by him. Contrary to Waypoint's claims, Comcast did provide Waypoint with notice of the correspondence exchanged with Plaintiff's counsel. Contrary to Waypoint's claims, Waypoint received information regarding Comcast's past collection efforts. Contrary to Waypoint's claims, Waypoint was well aware of the fraudulent nature of Plaintiff's alleged account before they received Experian's first July 17, 2018 ACDV.
>
> With regard to § 1692e(2)(A), contrary to Waypoint's claims, Plaintiff has established that Waypoint had knowledge that the debt was not owed by Plaintiff. With regard to § 1692e(8) of the FDCPA, contrary to Waypoint's claims, there is ample evidence that Waypoint communicated credit information regarding Plaintiff that Waypoint knew or should have known to be false. With regard to § 1692e(1), contrary to Waypoint's claims the record contains plentiful evidence that Waypoint made false representations and engaged in deceptive means in an attempt to collect the alleged debt. Waypoint's account notes and their communications with Comcast indicate that Waypoint was aware or should have been aware that the Comcast account was opened by way of fraud. Waypoint's account notes and Ms. Pelfry's testimony both show that on July 16, 2018, Waypoint allegedly "investigated" Plaintiff's dispute in response to Experian's ACDV bearing the same date. Specifically, Waypoint's account notes show that as early as November 30, 2017 at 7:48 AM, the account was placed "on hold" as it was "under

> investigation and with our legal team" due to Plaintiff's dispute of this alleged account. Waypoint's own account notes show that as early as November 30, 2017 at 10:42 AM, Waypoint was aware that Comcast had requested a "fraud packet" due to Plaintiff's dispute.
>
> Yet even after being informed of the specific basis of Plaintiff's dispute by way of the ACDV and their own account notes, the "investigation" of Plaintiff's dispute lasted from 3:31:41 PM until 3:31:54 PM on July 16, 2018. To be clear, Waypoint "investigated" Plaintiff's dispute for thirteen (13) seconds per Waypoint's account notes. . . . Plaintiff's credit dispute was investigated by Ms. Samantha Pelfry on behalf of Waypoint. Ms. Pelfry is an "administrative Wage Garnishment Analyst" and she works in the "Administrative Wage Garnishment" department for Waypoint's parent company, Trellis. Investigation of credit disputes was generally not part of Ms. Pelfrey's job duties. She was brought in from the "Administrative Wage Garnishment" department of Trellis to help with Waypoint's "backlog" of credit disputes. She was trained for only two days on credit disputes. . . . For a few months, Ms. Pelfrey handled credit disputes for "an hour or two" a day and handled up to "200" credit disputes during that "hour or two." . . . This means that Ms. Pelfrey typically spent only seconds "investigating" a credit dispute. . . .

(Pl.'s Opp'n Summ. J. 16–18.)

Notably absent from Plaintiff's argument is any suggestion that Waypoint sent *any* communication, let alone "any false, deceptive or misleading" representation, communication, or means in order to collect a debt. Although Waypoint sent a dunning letter to Plaintiff on November 28, 2017, and then made several attempts to reach Plaintiff by telephone between November 2017 and July 2018, Plaintiff admits that he never received any such letter or phone calls. Indeed, Plaintiff concedes that he had no direct communication—whether by letter, email, or telephone—with Waypoint.

To the extent, Plaintiff challenges Waypoint's communications with the consumer reporting agencies, Plaintiff has not identified any false representations or deceptive means in such communications. "The FDCPA does not impose upon a debt collector any duty to investigate independently the validity of the debt." Jacques v. Solomon & Solomon P.C., 886 F. Supp. 2d 429, 433 (D. Del. 2012). Nor can a plaintiff impute a creditor's knowledge of a dispute to a debt collector. See Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir. 2004) ("Courts do not impute to debt collectors

other information that may be in creditors' files—for example, that debt has been paid or was bogus to start with.").

Here, Plaintiff has produced no evidence that, at the time Comcast assigned the account for collection to Waypoint, Comcast provided Waypoint with any information regarding past collection efforts or correspondence with Plaintiff's counsel. While Comcast originally told Waypoint that the account was to be placed on hold as "under investigation" and with the legal team, Comcast immediately thereafter informed Waypoint that Plaintiff had not submitted the requested "fraud packet" and that collections could resume until that "fraud packet" was received.

Waypoint thereafter had no basis on which to question the validity of the debt until July 16, 2018, when Waypoint received an ACDV from Experian indicating that Plaintiff disputed the accuracy of the information on the account. Waypoint, through its employee Ms. Pelfrey, marked the account disputed. Comcast subsequently informed Waypoint that the dispute was "invalid" and that "Stefan Ingram" was the responsible party. In November 2018, Waypoint received a second ACDV from Experian and an initial ACDV from Equifax, this time indicating that the dispute was based on fraud. At that juncture, Waypoint deleted the disputed trade line and ceased collections activity on the account.

In short, and taking all evidence of record in the light most favorable to Plaintiff, I find no basis for Plaintiff's § 1692e FDCPA claim. Plaintiff has failed to identify any representation or statement by Waypoint made in an effort to collect the debt, let alone one which is materially misleading. Accordingly, I will grant summary judgment in favor of Waypoint on this claim.

2. 15 U.S.C. § 1692f and f(1)

Section 1692f(1) provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized

by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).  Section 1692f is a "a catchall provision."  Thomas v. John A Youderian Jr., LLC, 232 F. Supp. 3d 656 (D.N.J. 2017).  Courts have therefore routinely dismissed § 1692f claims when a plaintiff "does not identify any misconduct beyond that which [he] assert[s] violate[s] other provisions of the FDCPA."  Brannigan v. Harrison, No. 15-cv-2991, 2018 WL 1942520, at *12 (D.N.J. Apr. 24, 2018) (citing cases); see also Bermudez v. Diversified Consultants Inc., No. 18-cv-2004, 2019 WL 415569, at *5 (E.D. Pa. Feb. 1, 2019).

Here, Plaintiff does not assert that Waypoint engaged in any of the activities enumerated in § 1692f(1).  Plaintiff also puts forth no evidence from which to plausibly infer that Waypoint engaged in "unfair or unconscionable" conduct beyond that addressed in § 1692e claim.  As such, Waypoint is also entitled to summary judgment on this claim.[4]

## IV. CONCLUSION

In light of the foregoing, I find no genuine issue of material fact in this case that precludes me from granting summary judgment in Waypoint's favor on all claims against it.  Accordingly, I will grant Waypoint's Motion for Summary Judgment in its entirety.

---

[4] Alternatively, Waypoint also argues that it is not liable for any FDCPA violation under the "bona fide error" defense of 15 U.S.C. § 1692k(c).  As I dismiss this claim on other grounds, I need not address this defense.